UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **JEFFERY KYLE LANDRUM** | **CIVIL ACTION NO. 23-340-P** |
| **VERSUS** | **JUDGE EDWARDS** |
| **SAM DOWIES, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report, and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed by pro se plaintiff Jeffery Kyle Landrum ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on March 14, 2023. Plaintiff names the Claiborne Parish Sheriff's Office, Sheriff Sam Dowies, Deputy Brian Driskill, Detective Kevin Brown, Detective Ryan Barnett, Brandy Peck, James Bellamy, Confidential Informant Sean Bowers, and Angel Brancato as defendants.

Plaintiff claims that on November 1, 2021, Brandy Peck, James Bellamy, and Sean Bowers filed a false report of simple criminal damage to property against him. He claims Brandy Peck and James Bellamy stated in a police report that they heard his voice outside the residence but never actually saw him on the premises. He claims Sean Bowers made a statement three days after the alleged crime and stated in a police report that he saw a white

male wearing a ball cap and driving a white Ford truck. He claims Sean Bowers did not identify him in a photo lineup and did not identify his Ford truck.

Plaintiff claims that on November 5, 2021, Detectives Kevin Brown, Ryan Barnett, and Robby Byrd went to his residence to interview him regarding the simple criminal damage to property allegation. He claims Detective Brown knew he was represented by counsel. He claims Detective Brown asked him if he was willing to speak to him without counsel present and he replied that he was not. He claims Detective Brown then questioned his wife about knowing Brandy Peck and about an extramarital affair. He claims Detective Byrd then informed his wife that she was not under investigation and was not a person of interest. Plaintiff claims he asked Detectives Brown and Barnett if they wanted to review surveillance from his game cameras that would establish his alibi. He claims Detectives Brown and Barnett replied they were not there to go hunting and failed to properly investigate the crime. Plaintiff informed Detectives Brown and Barnett that he would not be making a statement. He claims Detective Brown then took a photograph of his truck and asked if it was his vehicle. Plaintiff did not respond and returned to his residence to call his attorney. Plaintiff claims that a short time later, Detective Brown contacted him by phone and asked if he was going to speak with him without his attorney present. Plaintiff told him that he was not and to refer all his questions to his attorney. He claims his attorney notified Detective Brown that he had violated Plaintiff's constitutional rights by attempting to obtain a statement without his consent.

Page **2** of **13**

Plaintiff claims that on November 16, 2021, Detective Brown obtained an arrest warrant for him for simple criminal damage to property by fabricating evidence and committing perjury. He claims Detective Brown stated in the arrest warrant that his truck was seen on video leaving the premises of the alleged crime. Plaintiff claims the photograph he saw Detective Brown take of his truck was the one used in place of the video to obtain the arrest warrant.

Plaintiff claims that on November 19, 2021, Sheriff Sam Dowies, Chief Deputy Brain Driskill, and Detective Brown arrived at his residence to serve the arrest warrant. He claims that while serving the arrest warrant, Detective Brown placed him in handcuffs so tight that his blood flow was restricted, and his hands turned purple. He claims that when Detective Brown patted him down, he intentionally grabbed his genitalia using excessive force and whispered in his ear "who's the bitch now." He claims Chief Deputy Driskill ordered all uniform personnel wearing body cameras to wait outside so nothing could be recorded. Plaintiff claims that while Detective Brown escorted him out of his residence and to the patrol car, he slammed him into a door frame causing him to suffer three builging disks in his lower back. He claims Detective Brown attempted to trip him and cause him to fall down a set of steps so he could file a resisting an officer charge against him.

Plaintiff claims that after he was placed in the patrol car, Sheriff Dowies and Chief Deputy Driskill spoke to several family members and made defamatory statements about him. He claims Sheriff Dowies told his wife that he was a liar and guilty because he had

secured counsel. He claims Chief Deputy Driskill informed his wife that he was seen on video. He claims that when his wife asked to see the video, Chief Deputy Driskill showed her pictures on his cell phone of the damage to the vehicles. He claims Sheriff Dowies informed his wife that she needed to file for a divorce and referred to him as a piece of white trash.

Plaintiff claims that on July 5, 2022, Assistant District Attorney Carey Brown informed his attorney that there was no video as alleged by Detective Brown in his offense report and affidavit for an arrest warrant. He argues this proves Detective Brown abused his authority as a peace officer and committed perjury.

Plaintiff claims that on February 1, 2022, Angel Brancato filed a false report of battery against an emergency medical service person. He claims she alleged in the police report that he smacked her on the upper backside of her upper right thigh. He claims Brancato further stated that there was no witness to this act. He claims Detective Brown relied on her report to obtain an arrest warrant against him. Plaintiff claims he is a licensed paramedic and is authorized to respond to medical or trauma calls as a first responder. He claims he was a first responder acting as an off-duty paramedic on this day.

Plaintiff claims that on February 3, 202[2], Detective Brown contacted him regarding the arrest warrant and advised him that he needed to meet him at the Claiborne Parish Detention Center to turn himself him or he would come to his job to arrest him. Plaintiff turned himself in. He claims that during the booking process, Detective Brown

got in his face and informed him that he would "f… him up." He took this as a threat of violence. Plaintiff claims Captain Morgan informed Detective Brown that his behavior would not be tolerated within the Claiborne Parish Detention Center and abuse of an inmate is a violation of his constitutional rights. Plaintiff claims he was threatened with bodily harm, groped, and harassed when he did not answer questions to the arresting detectives' satisfaction. Plaintiff claims the Sheriff's Office refuses to release the video of the incident to him.

Plaintiff claims that on November 28, 2022, the assistant district attorney reduced the simple criminal damage to property charge to the lowest misdemeanor possible. He claims the reduced charge meant he would have a bench trial or could accept pretrial diversion. Plaintiff argues his right to a fair and impartial trial among his peers was violated.

Plaintiff claims all charges against him have been dismissed. He claims that as to the felony simple criminal damage to property greater than $1000 but less than $50000 charge, it was reduced to misdemeanor simple criminal damage to property less than $1000.00 and he was placed on pre-trial diversion on February 8, 2023 and completed the program on March 6, 2023. He claims that as to the battery of an emergency medical service personal charge, he was placed on pretrial diversion on February 8, 2023 and completed the program on March 6, 2023. On March 23, 2023, the State filed a motion to

dismiss the charges of battery of medical personnel and simple criminal damage to property (X2) [Doc. 8, p.4].

Accordingly, Plaintiff seeks compensatory and punitive damages, attorney fees, judicial interest, and all costs and expenses.

## LAW AND ANALYSIS

### Claiborne Parish Sheriff's Office

Plaintiff names the Claiborne Parish Sheriff's Office as a defendant. Under Louisiana law, the Parish Sheriff's Office is not a proper defendant since it is not an entity capable of being sued. Cozzo v. Tangipahoa Parish Counsel, 279 F.3d 273, 283 (5th Cir.2002). Accordingly, Plaintiff claims against the Claiborne Parish Sheriff's Office should be dismissed as frivolous.

### Brandy Peck, James Bellamy, Sean Bowers, and Angel Brancato

Plaintiff claims that on November 1, 2021, Brandy Peck, James Bellamy, and Sean Bowers filed a false report of simple criminal damage to property against him. He claims that on February 1, 2022, Angel Brancato filed a false report of battery against him.

Section 1983 prescribes redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. See 42 U.S.C. § 1983. A plaintiff in a civil rights suit must show that the conduct of which he is complaining was committed by a person acting under color of state law. Plaintiff has not alleged any action that would give rise to defendants Brandy Peck, James Bellamy, Sean Bowers, and Angel Brancato being

state actors for purposes of Section 1983. Accordingly, Plaintiff's civil rights claims against Brandy Peck, James Bellamy, Sean Bowers, and Angel Brancato should be dismissed as frivolous.

**Prescribed Claims**

Plaintiff claims that on November 5, 2021, Detectives Kevin Brown, Ryan Barnett, and Robby Byrd went to his residence to interview him regarding the simple criminal damage to property allegation even though Brown knew he was represented by counsel. Plaintiff refused to be questioned. He claims Detectives Brown and Barnett refused to look at surveillance from his game cameras and failed to properly investigate the crime. He claims Detective Brown took a photograph of his truck and asked him if it was his vehicle. Plaintiff did not respond. He claims Detective Brown contacted him by phone and asked if he was going to speak to him without his attorney present. Plaintiff told him that he was not and to refer all questions to his attorney.

Plaintiff claims that on November 19, 2021, Detective Brown placed him in handcuffs that were so tight that his blood flow was restricted, and his hands turned purple. He claims Detective Brown intentionally grabbed his genitalia using excessive force. He claims Chief Deputy Driskill ordered all uniform personnel wearing body cameras to wait eoutside so nothing could be recorded. He claims Detective Brown slammed him into a door frame causing him to suffer three bulging disks in his back and attempted to trip him and cause him to fall down a set of steps. He claims that after he was placed in the patrol

car, Sheriff Dowies and Chief Deputy Driskill made defamatory statements about him to several family members.

Plaintiff claims that on February 3, 2022, Detective Brown threatened him during the booking process. He claims Detective Brown threatened him with bodily harm, groped him, and harassed him when he did not answer questions to the arresting detectives' satisfaction.

In Wilson v. Garcia, 471 U.S. 261 (1985), the Court articulated the guidelines to be used in determining what prescriptive period should apply to Section 1983 claims. The Court determined "§ 1983 claims are best characterized as personal injury actions" and the forum state's statute of limitations applicable to such claims should be used. Id. at 280. In Gates v. Spinks, 771 F.2d 916 (5th Cir. 1985), the Fifth Circuit Court of Appeals phrased the test as: "The state statute governing the general tort remedy for personal injuries should apply to 1983 actions . . ." Gates, 771 F.2d at 919.

The Louisiana Civil Code provides a general prescriptive statute that governs tort actions. The article subjects delictual actions to a liberative prescription of one year. See La. C.C. art. 3492. The Fifth Circuit qualified this prescriptive period, however, when it held that "a section 1983 action accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis for the action." Watts v. Graves, 720 F.2d 1416, 1417 (5th Cir. 1983).

Plaintiff claims his civil rights were violated by Defendants Brown and Barnett on November 5, 2021. He claims his civil rights were violated by Detective Brown, Chief

Page **8** of **13**

Deputy Driskill, and Sheriff Dowies on November 19, 2021. Thus, prescription began to run as to these claims in November of 2021. Plaintiff claims that on February 3, 2022, Detective Brown and arresting detectives threatened him with bodily harm, groped him, and harassed him.

The above entitled and numbered complaint was not filed by the Clerk of Court until March 14, 2023. Plaintiff's claims are therefore prescribed. Accordingly, Plaintiff's civil rights claims should be dismissed as frivolous.

**Heck Claims**

First, Plaintiff claims Detective Brown obtained an arrest warrant for him for simple criminal damage to property by fabricating evidence and committing perjury. He claims ADA Brown informed his attorney that there was no video as alleged by Detective Brown in his offense report and affidavit for an arrest warrant. Plaintiff claims that on November 28, 2022, the Assistant District Attorney reduced the simple criminal damage to property charge against him to the lowest misdemeanor possible. He claims his right to a fair and impartial jury among his peers was violated. Second, Plaintiff claims Detective Brown relied on a false report to obtain an arrest warrant against him for battery of emergency medical service personnel.

As to each charge, Plaintiff was placed on pretrial diversion on February 8, 2023 and completed the program on March 6, 2023. On March 23, 2023, the State filed a motion to dismiss without prejudice the charges of battery of medical personnel and simple criminal damage to property (X2).

Plaintiff is seeking monetary damages. The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994). Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983. See Edwards v. Balisok, 520 U.S. 641, 648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190-91 (5th Cir. 1998). Heck involved a civil rights claim brought by a state prisoner. The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit. See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996). This doctrine is also applicable to pretrial programs such as pretrial diversion agreements, accelerated rehabilitation disposition programs, deferred adjudication orders, and pretrial intervention programs, wherein charges are dismissed only after the criminal defendant successfully completes a probationary period.

In Taylor v. Gregg, 36 F.3d 453 (5th Cir.1994) (overruled on other grounds), the Fifth Circuit reasoned that "entering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant." Id. at 456. The court held that "by entering these agreements, criminal defendants are effectively foregoing their potential [civil] suit[s] in exchange for conditional dismissal of their criminal charges." Id.[1] The Fifth Circuit has also noted that "proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty." Evans v. Ball, 168 F.3d 856, 859 (5th Cir.1999) (emphasis added). See also Morris v. Mekdessie, 768 Fed. Appx. 299, (5th Cir. 2019); Elphage v. Gautreaux, 969 F.Supp.2d 493, (M.D. La. Sept. 3, 2013)

Plaintiff is seeking monetary damages for civil rights violations under Section 1983; therefore, he must prove his conviction(s) and/or sentence(s) have been invalidated. He has not met this precondition and his complaint must be dismissed until such time that he can demonstrate that his conviction(s)and/or sentence(s) have been invalidated.

## CONCLUSION

Plaintiff is not a prisoner; nor is he proceeding in forma pauperis. Therefore, the screening provisions of Title 28 U.S.C. §§ 1915 and 1915A are not applicable. However,

---

[1] The Taylor court also discussed the public policy rationale behind the application of the Heck rule to pretrial diversion programs. See Taylor, 36 F.3d at 456. The court reasoned that allowing a plaintiff to proceed with civil Section 1983 claims would constitute poor public policy because it would implicitly challenge the validity of the probationary period. See id. Additionally, such practice "would have a chilling effect on prosecutors' willingness to enter into [pretrial diversion] type of arrangements" and "[they] would be less willing to agree to an adjournment in contemplation of dismissal if the defendant could then turn around and sue ... under Section 1983." Id.

in Apple v. Glenn, 183 F.3d 477, 479 (6th Cir.1999) (per curiam) (citing Hagans v. Lavine, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974)), the United States Sixth Circuit Court of Appeals recognized a district court's inherent authority to conduct a limited screening procedure, sua sponte, in a fee-paid non-prisoner's complaint, if it appears from the pleadings and exhibits that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." The court of appeals also held that sua sponte dismissal is appropriate where claims lack "legal plausibility necessary to invoke federal subject matter jurisdiction." Id. at 480 (citing Dilworth v. Dallas County Community College District, 81 F.3d 616, 617 (5th Cir.1996)).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary damages for his allegedly unconstitutional conviction and sentence be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met. **IT IS FURTHER RECOMMENDED** that Plaintiff's remaining civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See <u>Douglas v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 21st day of February, 2024.

Mark L. Hornsby
U.S. Magistrate Judge